**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**NICHOLAS VAUGHN**
        **Petitioner,**

**vs.**                                                    **CASE NO.: 5:10cv217/RS/MD**

**KENNETH S. TUCKER,**
        **Respondent.[1]**

---

### REPORT AND RECOMMENDATION

        This cause is before the court on petitioner's petition for habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 30).  Petitioner filed a response (doc. 35).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and the petition is without merit and should be denied.

---

[1]  Kenneth S. Tucker became Secretary of the Florida Department of Corrections on August 24, 2011, and is substituted as the respondent.

## BACKGROUND AND PROCEDURAL HISTORY

The petitioner, Nicholas Vaughn, was charged with selling cocaine in case number 04-4340 in the Circuit Court of Bay County, Florida, in violation of Sections 893.03 and 893.13, Florida Statutes (2004) (doc. 30, ex. B, p. 7).[2]  Mr. Vaughn was tried by jury and found guilty of the charge on November 17, 2005.  (Ex. C, p. 272). On January 3, 2006, the court adjudicated him a habitual offender under Florida law and sentenced him to a term of thirty years imprisonment with 386 days of credit time (ex. C, pp. 288-292).

Mr. Vaughn appealed the conviction and sentence to the First District Court of Appeal ("First DCA").  (Ex. C, p. 302).  On November 8, 2007, the First DCA *per curium* affirmed the conviction and sentence without written opinion.  *Vaughn v. State of Florida*, 973 So.2d 1132 (Fla. 1st DCA 2007) (Table) (copy at ex. C, p. 376).  A motion for rehearing was denied on January 31, 2008 (ex. Q).

On March 12, 2008, Mr. Vaughn filed a motion for reduction or modification of sentence pursuant to Rule 3.800(c), Florida Rules of Criminal Procedure (ex. C, p. 377).  He averred the goals of sentencing could be accomplished with a sentence of fewer years (*Id.* at 377-78).  The trial court denied the motion in open court on March 20, 2008 (ex. D, p. 475).

On September 11, 2008, Mr. Vaughn filed a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure (ex. D, p. 476-518).  He alleged eleven grounds for relief based on ineffective assistance of counsel (*id.*). The Rule 3.850 court held an evidentiary hearing on April 24, 2009 (ex. L, p. 631-83). At the conclusion of the hearing, the Rule 3.850 judge granted the State's motion for directed verdict and denied all of Mr. Vaughn's grounds for relief (ex. L, pp. 679-81). The court entered a written order on May 6, 2009 (ex. E, pp. 606-610).

Mr. Vaughn appealed, arguing, "the trial court erred in denying [his] motion for post-conviction relief."  (Ex. R).  His brief on appeal only addressed grounds one

---

[2]  Hereafter all references to exhibits will be to doc. 30 unless otherwise noted.

through six and ten of his post-conviction motion (Ex. R, pp. 11-12).   It did not address grounds seven through nine or eleven.  On June 11, 2010, the First DCA *per curiam* affirmed the Rule 3.850 court's decision (ex. T).  The mandate issued on June 29, 2010 (Ex. U).

On August 23, 2010, Mr. Vaughn filed the instant petition for writ of habeas corpus (doc. 1).  Respondent states it appears the petition is timely (doc. 30, p. 23).

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254 provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  Section 2254(d)(2) must be divided into two separate inquiries:

---

[3]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).   The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011); *see Knowles v. Mirzayance*, 556 U.S. 111, __, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling.  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).  Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is

materially indistinguishable from a decision of [the] Court but reaches a different result." ***Brown v. Payton***, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *see* § 2254(d)(1).  The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." ***Early v. Packer***, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  § 2254(d)(1); *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it.  *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011) (holding new evidence introduced in federal habeas court has no bearing on § 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam)); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439.  However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles*, 129 S. Ct. at 1419.  Notably, even a state court's incorrect application of law will not

warrant federal habeas relief unless it is also objectively unreasonable.  *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination.  *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).  The petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct.  *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals in *Gill* clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[4]  The Eleventh Circuit granted a limited Certificate of Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning."  *Id.* at 1286.[5]

---

[4]  Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel. *Gill*, 633 F.3d at 1275-1284; *see* U.S. Const. amend. VI.  The trial court denied the first motion, concluding that Mr. Gill's waiver of counsel was not knowing and intelligent.  *Gill*, 633 F.3d at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation).  It also denied the second motion, but it allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy. *Gill*, 633 F.3d at 1284. He was convicted, and the Florida Second District Court of Appeal ("Second DCA") affirmed without opinion the trial court's denial of post-conviction relief.  *Id.* at 1284-85.  Mr. Gill then filed a petition in federal court, which petition the court denied with prejudice.  *Id.* at 1284-85.

[5]  The court reviewed Gill's claims that the federal habeas court erred in two respects.  First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." 633 F.3d at 1288.  Second, Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make."  *Id.* Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally"

The court acknowledged the well-settled principle that summary affirmances, such as the Florida Second District Court of Appeal's, are presumed adjudicated on the merits and warrant deference.  *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)).  "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion.  *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784).  Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion."  *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)).  The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning."  *Id* at 1291 (agreeing with the Fifth Circuit court in *Neal*, *supra*).  In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*[6]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]"

_____

waived his right to counsel.  *Id.*

[6]  Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive.  *Id.* at 1288.

whether the state court's decision was objectively unreasonable.  *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786*.*  Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion."  *Id.* at 786 (internal quotations omitted).

The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59, 168 L. Ed. 2d 662 (2007); *Jones v. Walker*, 496 F.3d 1216, 1228 (2007) (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  When performing its review under § 2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or denied.  *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010).  The federal court must also bear in mind that state court factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness).  "If this standard is difficult to meet, that is because it was meant to be."  *Harrington*, 131 S. Ct. at 786.

## OTHER CONTROLLING LEGAL PRINCIPLES

**Ineffective assistance of counsel.**

Petitioner contends in his grounds for relief in this court that he was denied his constitutional right to the effective assistance of counsel.  The Constitution provides: "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  To prevail on a claim of ineffective assistance of counsel, the petitioner must prove:  (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984);  *see also Berghuis v. Thompkins,* __ U.S. __, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010). Reasonableness of representation does not implicate what is possible, prudent, or even appropriate, but only what is "constitutionally compelled."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler*, 218 F.3d at 1314.  Courts must make "every effort. . .to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065;  *see also, e.g., Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance").  The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioner's to bear, is and is supposed to be a heavy one.  And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately."  *See White v. Singletary*, 972

F.2d 1218, 1221 (11ᵗʰ Cir. 1992).  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11ᵗʰ Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11ᵗʰ Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11ᵗʰ Cir. 1992) (". . .the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S. Ct. at 2067; *see Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11ᵗʰ Cir. 2005).  Petitioner must show a reasonable probability exists that the outcome would have been different.  *Frazier v. Bouchard*, ___ F.3d ___, 2011 WL 5059247 *9 (11ᵗʰ Cir. Oct. 25, 2011); *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If  it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be "applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788.  As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The

question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted); *Knowles,*129 S. Ct. at 1420 (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland,* 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. "This [inquiry] is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Jones v. Sec'y, Dep't of Corr.*, 644 F.3d 1206, 1209 (11th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 785). Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d) and *Strickland*, and petitioners only rarely prevail on this ground. *See Rogers*, 13 F.3d at 386.

## Exhaustion of state remedies and Procedural Default

Respondent contends some of Mr. Vaughn's ground for relief are unexhausted (doc. 30, pp. 58-60, 66-69). A petitioner defaults on an issue unless the petitioner first exhausts available state court remedies so the state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right). *But see* § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365-66, 115 S. Ct.

at 888; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (same).  This affords the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.

"Fair presentation" requires that, in each claim for relief, the petitioner include a reference to a specific federal constitutional guarantee and a statement of the facts that entitle the petitioner to relief.  *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 513, 30 L. Ed. 2d 438 (1971).  To satisfy the exhaustion requirement, the petitioner must present the same facts and claims in state court about which he petitions the federal court.  *Id.*  Appeals to a broad, general constitutional guarantee also fail to present the "substance" of such a claim to the state court.  *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 278, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant. . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)).  A state prisoner's claim is not fairly presented if the state court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material. . .." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  However, when a petitioner squarely raises a federal constitutional claim in state court, the "failure of a state court to mention a federal claim does not mean the claim was not presented to it."  *Dye v. Hofbauer*, 546 U.S. 1, 3, 126 S. Ct. 5, 6-7, 163 L. Ed. 2d 1 (2005).  And, simply labeling the claim "federal" may be sufficient to fairly present the claim.  *Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351 (dictum)*.*

The Eleventh Circuit requires specific reference to the United States Constitution and favors citations to federal cases.  *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us.").  This stricter standard requires the petitioner to differentiate a claim under the United States Constitution from one under a state

constitution.  *Id.* at n.5; *McNair v. Hall*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) ("a habeas applicant [must] do more than scatter some makeshift needles in the haystack of the state court record" (internal citations omitted)).  If state and federal constitutional law overlap in their applicability to the petitioner's claim, he must raise his issue in terms of the federal right in state court to obtain federal review of the issue.  *Duncan*, 513 U.S. at 366, 115 S. Ct. at 888; *see also Anderson*, 459 U.S. at 7 and n.3, 103 S. Ct. at 278 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2557 and n.1, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  The Eleventh Circuit recently stated:

> Nonetheless, comity does not demand that we give preclusive effect to a state court decision disposing of a claim on state grounds unless: (1) the state court has plainly stated that it is basing its decision on the state rule; (2) the state rule is "adequate," i.e., not applied in an arbitrary manner; and (3) the state rule is "independent," i.e., the federal constitutional question is not intertwined with the state law ruling.

*Frazier v. Bouchard*, __ F.3d __, 2011 WL 5059247 *2 (11th Cir. Oct. 25, 2011). Unless the federal court determines the state court "clearly and expressly" relied on independent and adequate state grounds, the federal court may address the

petition.[7]  *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557.  However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question.  *Id.* at 735 n.1, 2557 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9, 103 L. Ed. 2d 308 (1989) (federal habeas court need not require a federal claim be presented to a state court if the state court would hold the claim procedurally barred).

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935 (1991).  A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement.  *Maples v. Allen*, 586 F.3d 879, 888 (11th Cir. 2009) (*citing* Lee*, 534 U.S. at 385-88, 122 S. Ct. at 890-92)).

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, the petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice.  *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000).  Cause exists when an external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim, prevented petitioner from raising the claim.  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991).  To meet the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is

---

[7]  The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

actually innocent" because "it is more likely than not that no reasonable juror would have convicted him."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995).  Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*  In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case.  *Id.*


Deference to state court findings of fact

Federal habeas courts defer to the state court's findings of fact, unless the petitioner shows by clear and convincing evidence that it was unreasonable.  *See* 28 U.S.C. § 2254(d)(2); § 2254(e)(1); *Callahan v. Hall*, 427 F.3d 897, 926 (11th Cir. 2005) ("§ 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2)."); *see also Rutherford v. Crosby*, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record").  Under the AEDPA, the state court does not have to explicitly state its findings of fact.  *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11th Cir. 2008).  State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim.  *Id.*  These implicit findings are entitled to deference.  *Id.*  As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory.  *Early*, 537 U.S. at 8, 123 S. Ct. at 365.  A summary adjudication with a brief, or total

lack of, statement of reasons is still an adjudication on the merits. *Harrington*, 131 S. Ct. at 780, 784; *see Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.").

Under Eleventh Circuit precedent, the habeas court will "'look through' a summary decision to the 'last reasoned decision' on the issue." *McGahee v. Alabama Dep't of Corr.*, 560 F.3d 1252, 1262 n.12 (11th Cir. 2009) (quoting *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1317 (11th Cir. 2006)); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991) (". . .the *Harris* presumption only applies after habeas court determines 'the relevant state court decision. . .fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 2559, 115 L. Ed. 2d 640 (1991)).

## PETITIONER'S GROUNDS FOR RELIEF

### Grounds One through Six

Grounds One through Six challenge portions of testimony elicited at trail regarding the general practices of drug dealers.  Mr. Vaughn alleges his trial counsel, Alvin Peters, was ineffective for failing to object to impermissible testimony describing "criminal behavior pattern, i.e., the practices of drug dealers."  (Doc. 1, p. 4).  For each ground, he claims his counsel's deficiencies prejudiced him by:

> (1) allowing the testimony to go unchallenged; (2) denying the Trial Court an opportunity to read a curative instruction; (3) not preserving the issue for plenary review; and (4) denying Petitioner due process and a fair trial.

(*Id.* at 4-8).  Mr. Vaughn avers the testimony was highly prejudicial because it invited the jury to infer that he was a drug dealer simply because his behavior was similar to that of other drug dealers (*Id.* at 4).  Mr. Vaughn's federal petition mirrors his state

post-conviction motion, which also raised these claims as grounds one through six (ex. D, pp. 481-94).

State Court Decision

The Rule 3.850 court held an evidentiary hearing on the motion (ex. L).  During cross-examination, Mr. Vaughn agreed that his counsel's strategy at trial was to discredit the confidential informant by showing that he was a drug dealer with a vendetta who set up Mr. Vaughn (ex. L, pp. 651-55).  He conceded that testimony about what drug dealers do could have helped his attorney establish that the confidential informant was a drug dealer (*id.* at 655).  The Rule 3.850 court denied his grounds for relief at the hearing.  The Rule 3.850 judge found that Mr. Peters' actions were based on sound trial strategy:

> . . .Mr. Vaughn, the strategy that's been presented by the State and that was presented at your trial, from my view, made excellent sense given the facts.  And you know, the cases that you cited in your Motion and that have been argued by Mr. Alldredge, you know, those cases apply to trials, but you don't look at them in a vacuum.  And in this instance, the strategy was to prove, by evidence, of what drug dealers do, that you got duped by, and set up by a two-time convicted confidential informant.  And you know, one of the strategies that are typically employed in cases like this, is to show the Jury just how believable your client is and how candid your presentation is, is you admit, we're not sitting here arguing that it's not cocaine, it's obviously, it's cocaine, that's not a defense to this case because we didn't do it.  And so the point being this, that when we look at the totality of the circumstances in this case, the way it was presented, the colloquys [sic] that occurred between you and me about your right to testify, first of all, Mr. Peters' performance did not fall below the standard expected of lawyers, it exceeded it. . ..

(Ex. L, pp. 679-70).

The court also issued a written order denying relief, stating in part: "Other testimony regarding drug dealers' habits were not inconsistent with defense's trial strategy; therefore, trial counsel's tactical decisions were reasonable and not deficient."  (Ex. E, p. 608).

### Federal Review of State Court Decision

The Rule 3.850 court set out the standard that governs ineffective assistance of counsel claims based on *Strickland, supra.* (Ex. E, pp. 606-07).  The court applied clearly established federal law and concluded Mr. Vaughn did not show his counsel's performance was deficient.  It did not address prejudice, nor was it required to.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 (the court may reject an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs).

The Rule 3.850 court acknowledged that the prosecution and the defense elicited testimony at trial regarding the habits of drug dealers (ex. E, p. 607).  Rule 403, Florida Rules of Evidence, states in part:

> Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.

Fla. Stat. § 90.403.  Florida courts have repeatedly held:

> [G]eneral criminal behavior testimony based upon a law enforcement officer's observations and experience in the investigation of other cases is inadmissible as substantive proof of a defendant's guilt, because a defendant has a right to be tried based on the evidence against him or her, not on the characteristics or general behavior of certain classes of criminals in general.

*Baskin v. State of Florida*, 732 So.2d 1179, 1180 (Fla. 1st DCA 1999).  *See, e.g., Dean v. State of Florida*, 690 So.2d 720, 723 (Fla. 4th DCA 1997) (detective's testimony about behavior patterns of drug dealers was not isolated and substantially affected defense; the "patently prejudicial testimony" was not harmless); *Lowder v. State of Florida,* 589 So.2d 933, 935 (Fla. 3d DCA 1991) (detective's testimony that "people who sell narcotics usually have cash in their pockets" was reversible error), *dismissed*, 598 So.2d 78 (Fla. 1992).  However, "[t]he Supreme Court has recognized that defense counsel in defending their client's interests, need not urge every conceivable objection the law would provide."  *Hubbard v. Haley,* 317, F.3d 1245,

1259 (11th Cir. 2003) (citing *Engle v. Isaac*, 456 U.S. 107, 133-34, 102 S. Ct. 1558, 1575, 71 L. Ed. 2d 783 (1982)).   The Rule 3.850 court determined defense counsel's decision not to object to generally impermissible testimony, and to elicit such testimony, was a matter of trial strategy:

> . . .According to trial transcripts and testimony of the Defendant, the defense strategy was to show that the confidential informant, Thomas Ray, was a drug dealer.  Defense counsel wanted to show to the jury that some drug dealers conduct their transactions outside and, at times, store their drugs outside.  This was offered to show how Mr. Ray could have stored the cocaine outside; he then induced the Defendant to come to his house.  Mr. Ray, according to defense, owed the Defendant $50.  He gave the Defendant the money, thus simulating a drug purchase.  Mr. Ray then took cocaine, which was already stored outside, to the police and represented it as drugs purchased from Defendant.
>
> Other testimony regarding drug dealers' habits were not inconsistent with defense's trial strategy; therefore, trial counsel's tactical decisions were reasonable and not deficient.

(Ex. E, pp. 607-08).

Matters of trial strategy generally do not constitute ineffective assistance. "We have long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000)); *see Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995) (whether to pursue residual doubt or another defense is strategy left to counsel, which court must not second-guess); *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir. 1983) (reliance on line of defense to exclusion of others is matter of strategy).  But not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, *Hardwick v. Crosby*, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Jackson v. Herring*, 42 F.3d 1350, 1367 (11th Cir. 1995). Whether a particular tactical decision was a reasonable one, however, is a question of law, *Hardwick*, 320 F.3d at 1163; *Jackson*, 42 F.3d at 1367.   "[A] tactical or

strategic decision is unreasonable if it is based on a failure to understand the law." *Hardwick v. Crosby*, 320 F.3d 1127, 1163 (11th Cir. 2003).

Grounds One through Six challenge trial testimony regarding general practices of drug dealers. Lieutenant Faith Bell was present during the controlled buy at confidential informant Thomas Ray's residence and collected two crack cocaine rocks from him after he met with Mr. Vaughn (Ex. J, pp. 138-45). Ground One focuses on testimony the prosecution elicited on direct examination. He questioned Lieutenant Bell about two short phone conversations between Mr. Ray and Mr. Vaughn:

> Q.   Are the conversations normally pretty long?
> A.   Very short, most drug dealers don't want to talk on the phone any more.

(Ex. J, p. 141). Mr. Peters did not object.

Ground Two alleges Investigator Bell and others testified that "$50.00 was a common amount of money used to purchase crack cocaine." (Doc. 1, p. 5). Mr. Ray, Lieutenant Bell, and Captain Ramie testified that cocaine is commonly purchased in quantities worth fifty dollars. (Ex. I, p. 45; ex. J, pp. 145, 167).

Ground Three alleges testimony elicited by Captain Ramie on direct examination was highly prejudicial because it inferred Mr. Vaughn could have been hiding drugs in a body cavity. The prosecution questioned Mr. Ramie about searching Mr. Vaughn:

> Q.   Are you aware if the defendant was, that Investigator Plummer searched him?
> A.   Yes, sir.
> Q.   Do you know if he performed a cavity search?
> A.   No, sir.
> Q.   Has there been a change in your office policy about searches?
> A.   Most recently we have found that a lot of the people we come in contact with, through trying to deter us from finding narcotics, they put it in their genital area or backs of their pants so, yes, sir, we have done a lot more strip searching.

> Q.      So is it fair to say that cavity searches are more prevalent now?
>
> A.      Yes, sir.

(Ex. I, pp. 172-73).  The prosecution's line of questioning on this subject had no meaningful impact on the trial.  Captain Ramie stated he had no personal knowledge of whether anyone performed a cavity search on Mr. Vaughn.  Although he testified that cavity searches are more prevalent, the jury could just as easily infer that the police broke standard procedure by failing to conduct a cavity search.  The testimony was not helpful to the prosecution, Mr. Peters' decision not to object was not unreasonable.

Ground Four attacks Mr. Peters' cross-examination of Lieutenant Bell (*see* doc. 1, p. 6):

> Q:      In your experience do drug dealers sometimes hide drugs outside their reddens (sic)?
>
> A:      Dealers, not users.
>
> Q:      Dealers do?
>
> A:      Drug dealers have, a type of dealers that stand around in yards and sell out of yards, in my experience I've seen that.
>
> Q:      You didn't search the outside of this dwelling did you?
>
> A:      No.

(Ex. J, p. 152).  Contrary to Mr. Vaughn's contention that Mr. Peters' first question was prejudicial, the line of questioning was part of his trial strategy to impeach Mr. Ray's credibility and portray him as a drug dealer.  Counsel focused on the evidence that Mr. Ray had drugs, drug paraphernalia (including scales), a gun, ammunition, and barking dogs to compare him to a "typical" drug dealer (ex. J, pp. 148-52).  Mr. Vaughn cannot show his counsel's strategy of portraying Mr. Ray as a drug dealer who was motivated to set up Mr. Vaughn to avoid being arrested constituted deficient performance or resulted in prejudice.

Mr. Vaughn's fifth ground alleges trial counsel's failure to object to Lieutenant Bell's statement that the cocaine recovered came from him improperly bolstered the

prosecution's case (doc. 1, p. 7).  He states:  "Such testimony allowed the jury to infer that because "Detective Bell believed so, it must be so. . .."  (*Id.*).

Mr. Vaughn quotes testimony Mr. Peters elicited from Lieutenant Bell on cross-examination:

> Q:     And can you say that from your own personal knowledge and observation that the piece of cocaine came from Mr. Vaughn?
> A:     It is my belief that it did.

(Ex. J, pp. 154-55).   However, Mr. Peters rejected Lieutenant Bell's answer and refocused the question to show she did not observe Mr. Ray procure cocaine from Mr. Vaughn:

> Q:     I understand your belief, but my question was not about your belief.  My question was can you say from your own personal observation that the piece of cocaine that's in evidence came from Mr. Vaughn?
> A.     I didn't see it come from Mr. Vaughn, no.

(Ex. J, p. 155).  This testimony supported Mr. Peters' case theory that Mr. Vaughn was not guilty because the he did not supply Mr. Ray the rocks of cocaine.  Mr. Vaughn has not shown how his counsel was deficient.  The record shows his counsel successfully impeached Lieutenant Bell's credibility as a witness to the sale.

In Ground Six, Mr. Vaughn alleges he was prejudiced by the prosecution's question:

> Q.     In these types of cases is it sometimes appropriate for law enforcement to suggest the name of a possible person who would sell cocaine?

(Doc. 1, p. 7; ex. J, p. 165).  Captain Ramie responded in the affirmative (ex. J, p. 165).

The prosecution's question was preceded by a bench conference, during which the trial judge determined that Mr. Peters' previous questions opened the door for the prosecution to ask about general procedures in controlled buy cases.  The

prosecution proffered the specific question to the trial judge before he asked it in open court:

> MR. GRAHAM:      I just want to be very, very careful about what the question I'm going to ask and that's the reason I'm doing this.
>
> THE COURT:      Thank you.
>
> MR. GRAHAM:      Question will be, at some point in time is (sic) these types of cases is it sometimes appropriate for law enforcement to suggest the name of someone who would possibly sell cocaine. Is that in compliance with your ruling, Judge?
>
> THE COURT:      We have to be very careful here.  Say the question again.
>
> MR. GRAHAM:      In these type of cases is it sometimes appropriate for law enforcement to suggest the name of someone who would sell cocaine.
>
> THE COURT:      You can be heard if you want to.
>
> MR. GRAHAM:      I don't want to violate your order.
>
> MR. PETERS:      I think all of this comes from the original testimony of the informant that he was shown a piece of paper with Vaughn's name on it and they suggested it to him.  That's all we got here.
>
> THE COURT:      You've - -
>
> MR. PETERS:      He can, I think he can ask that question.
>
> THE COURT:      I think he can ask that question too.

(Ex. J, pp. 161-62).  Counsel is not deficient for failing to make a meritless objection. *Land v. Allen*, 573 F.3d 1211, 1221 (11th Cir. 2009) (attorney's failure to object to prosecutorial misconduct where petitioner was not entitled to relief does not warrant reversal); *see also, e.g., Muhammad v. McNeil*, 352 Fed. Appx. 371, 377 (11th Cir. 2009) (unpublished opinion).  The record shows the trial judge ruled the question was appropriate; trial counsel had no basis to object when the prosecution asked the question.

Regardless of whether Mr. Peters' failure to object to statements about the general practices of drug dealers was a proper trial strategy, to prevail on a claim of ineffective assistance of counsel, Mr. Vaughn must still show that his performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686,

104 S. Ct. at 2064.  Mr. Vaughn has not shown there is a reasonable probability that the outcome of the trial would have been different.

The record reveals that the jury was presented with overwhelming evidence of Mr. Vaughn's guilt.  *See Harrison v. Jones*, 880 F.2d 1279, 1281-82 (physical evidence presented at trial made petitioner's version of events highly unlikely even absent his counsel's failure to render competent assistance); *see also Jones v. United States*, 2011 WL 4425315 (11th Cir. Sept. 23, 2011) (unpublished opinion) (but for counsel's error in allowing admission of tainted evidence, the jury would have found the evidence failed to establish an essential element of the crime). The evidence showed the police searched the inside and outside of Mr. Ray's residence prior to the controlled buy and did not find drugs outside (ex. I, pp. 106-07).  Police also searched Mr. Ray before he met Mr. Vaughn and he was not in possession of any drugs (ex. I, pp. 107-08).  Mr. Ray contacted Mr. Vaughn to come to his residence on short notice (ex. I, pp. 45-46).  Mr. Ray gave Mr. Vaughn three marked bills, which police recovered from Mr. Vaughn.  A search of Mr. Vaughn's person revealed the marked bills in one pocket and $1,128 in small bills in a separate pocket (ex. J, p. 126).  Mr. Ray and Mr. Vaughn had a brief conversation at Mr. Ray's residence, after which he immediately turned over two "rocks" to the police (ex. I, p. 52).  The police searched Mr. Ray after Mr. Vaughn left, and he did not have any controlled substances (ex. I, pp. 110, 112).  The defense stipulated at trial that the rocks were cocaine (ex. I, p. 4).  A co-defendant who plead guilty to the charge of principal to the sale of cocaine testified that he drove Mr. Vaughn to Mr. Ray's residence to sell cocaine (ex. I, p. 91).

Mr. Vaughn has not shown that his trial counsel's performance was deficient or that there is a reasonable probability that but for his actions the result of the trial would have been different.  The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Vaughn is

not entitled to federal habeas relief on Grounds One through Six, and the writ should not issue.

Grounds Seven and Eight

Mr. Vaughn's Grounds Seven and Eight are unexhausted and cannot be reviewed in federal habeas court.  Ground Seven alleges his counsel was ineffective for advising him that if he took the stand, the nature and substance of his prior criminal record would be revealed to the jury (doc. 1, p. 8).  He also alleges counsel told him to "just say yes" when the trial judge asked him if he was sure he wanted to waive his right to testify (*id.*).  Ground Eight states his trial counsel was ineffective for stipulating that the substance recovered in the controlled buy was crack cocaine (*id.* at 9).  Mr. Vaughn argues in both grounds that his counsel's actions denied him due process of law and a fair trial (*id.* at 8-9).  Additionally, he states that counsel's stipulation "reliev[ed] the prosecution of its heavy burden of proof by conceding half of the elements required to be proven."  (*Id.* at 9).

Mr. Vaughn raised these arguments as grounds seven and eight of his state motion for post-conviction relief (ex. D, pp. 495-99).  However, he did not include these grounds in his appeal upon denial of his Rule 3.850 motion, so they were not presented to the state appellate court for review.  (*See* ex. R, pp. 11-15).  Therefore, the grounds are not properly exhausted.  It is too late for him to return to the state courts to exhaust the claims, and they are procedurally defaulted for purposes of federal habeas review.  *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.  He has not asserted cause for the default or that he is actually innocent of the crime for which he was convicted  (*See* doc. 35, pp. 9-12)  Mr. Vaughn is not entitled to federal habeas relief on Grounds Seven or Eight, and the writ should not issue.

## Ground Nine

Mr. Vaughn's final ground for relief alleges his counsel was ineffective due to the cumulative effect of his errors (doc. 1, p. 9-10).  Mr. Vaughn raised this claim as ground ten in his state motion for post-conviction relief (ex. D, pp. 502-07).

### State Court Decision

The Rule 3.850 court denied this claim after holding an evidentiary hearing (ex. E, pp. 607-08).  It addressed this ground together with the post-conviction motion grounds one through six, as ground ten only addressed his counsel's "continuing" failure to object to improper and prejudicial testimony (*see* ex. D, pp. 502, 505-07). The Rule 3.850 court denied relief on grounds one through six, finding that trial counsel was not deficient.  Accordingly, it also denied ground ten (ex. E, p. 609). Implicit in its finding is the conclusion that trial counsel's individual acts that were appropriate could not together make out a claim of cumulative error.

### Federal Review of State Court Decision

Mr. Vaughn raised the issue of cumulative error in his brief on appeal of the Rule 3.850 court's decision by referring specifically to cumulative error and restating the arguments advanced in grounds one through six (ex. R, pp. 11-15).  Therefore, the ground is exhausted.

Nevertheless, his cumulative-error claim based on counsel's failure to object to witness statements about the general behavior of drug dealers is without merit. The Supreme Court stated in *United States v. Cronic*, 466 U.S. 648, 659 n. 26, 104 S. Ct. 2039, 2047 n. 26, 80 L. Ed. 2d 657 (1984), that apart from errors of great magnitude, such as a complete denial of counsel or right of effective cross-examination, "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  Similarly, the Eleventh Circuit has held that where there is no error or only a single error, there can be no cumulative error. *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) ("factors" that taken on their own are not legal error do not "cumulatively" become error).

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Vaughn is not entitled to federal habeas relief on Ground Nine, and the writ should not issue.

## CONCLUSION

The undersigned has carefully reviewed the transcripts of proceedings, post-conviction motions, orders, records on appeal, and all submissions in this proceeding.  Grounds One through Six and Nine are without merit. Grounds Seven and Eight are unexhausted and procedurally defaulted from federal habeas review. Mr. Vaughn is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.     That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Nicholas Vaughn* in the Circuit Court of Bay County, Florida, case no. 04-4340, be DENIED and the clerk be directed to close the file.

2.     That a certificate of appealability be DENIED.

At Pensacola, Florida, this 4th day of November, 2011.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).